# EXHIBIT I

AO 106 (Rev. 04/10)  Application for a Search Warrant

FILED WITH

# UNITED STATES DISTRICT COURT

JUN 13 2012

for the

District of Utah

UNITED STATES
MAGISTRATE JUDGE
SAMUEL ALBA



SEALED

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

E-mail accounts for e-mail address aisc01@aol.com,
stored at the premises owned, maintained, or operated
by AOL Inc.

)
)
)
)
)
)

Case No.  2:12-MJ-164 SA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Section II of Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. section 1503(a) | Influencing or Injuring Officer or Juror Generally |

The application is based on these facts:

See attached Affidavit of Special Agent Thomas M. Hopkins

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Thomas M. Hopkins, DOJ-OIG
*Printed name and title*

Sworn to before me and signed in my presence.

Date:        06/13/2012

_____
*Judge's signature*

City and state:   Salt Lake City, Utah

Magistrate Judge Samuel Alba
*Printed name and title*

Subject to Protective Order

SEALED

## AFFIDAVIT OF SPECIAL AGENT THOMAS M. HOPKINS
## IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Thomas M. Hopkins, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent of the Department of Justice, Office of the Inspector General (DOJ-OIG) and am assigned to the New York Field Office, Boston, Massachusetts Area Office. I have been employed as a Special Agent with DOJ-OIG since July 1997. Prior to the DOJ-OIG, I was employed as a Criminal Investigator with the Internal Revenue Service, Inspection Division, from March 1988 through July 1997, and as a Special Agent with the Department of State, Bureau of Diplomatic Security, from November 1985 through March 1988. My duties with the DOJ-OIG include investigating allegations of criminal and administrative misconduct by DOJ personnel, including Federal Bureau of Investigation (FBI) employees, as well as allegations of waste, fraud and abuse regarding DOJ personnel and programs. I have received training in many subject areas, including public corruption and financial crimes. I have also conducted and/or assisted in investigations involving abuse of position and obstruction of justice by federal law enforcement personnel and others.

2.     I am currently investigating FBI Special Agent Robert Lustyik, Jr., who is assigned to counter-intelligence duties in the New York Division, for attempting to influence the investigation by federal law enforcement officers and prosecutors in the District of Utah of allegations of theft of federal funds, wire fraud and money laundering involving Michael Taylor, an individual with whom Lustyik has a personal business relationship, in violation of 18 U.S.C. § 1503(a) (Influencing or Injuring Officer or Juror Generally).

1

                                                                            US00121299

3.     I am submitting this affidavit in support of an application for a search warrant under 18 U.S.C. § 2703(a) and Rule 41 of the Federal Rules of Criminal Procedure to search and seize the e-mail account identified as aisc01@aol.com and other user-generated data stored with that account, and associated subscriber, transactional, and user connection information associated with that account, as described in Attachment A.   This e-mail account is relevant to the investigation because there is probable cause to believe that:  (1) aisc01@aol.com is Taylor's business e-mail account; (2) the account is used to communicate with an e-mail account operated by Lustyik, regarding mutual business activities between the two and others, as well as to communicate concerning the federal investigation of which Taylor is a target; and (3) Lustyik has attempted and continues to attempt to influence the federal criminal investigation into Taylor.  I therefore have probable cause to believe that this account contains evidence, fruits, and instrumentalities of the violation identified above, as described in Attachment B.  Because the e-mail addresses contain the domain name "aol.com," I have probable cause to believe that the account and the relevant data are maintained by America Online, Inc., government databases indicate, accepts service of process at:

> Public Safety and Criminal Investigations Unit
> Attn: Custodian of Records
> AOL Inc.
> 22000 AOL Way
> Dulles, VA 20166
> (Fax) (703) 265-2305

as described in Attachment A.

4.     The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other agents and witnesses.

2

This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE TO BELIEVE THAT FEDERAL CRIMES WERE COMMITTED

5.      I have probable cause to believe that FBI Special Agent Robert Lustyik, Jr., date of birth 06/24/1962, a citizen of the United States, assigned to the FBI New York Division, has attempted and continues to attempt to influence the investigation by federal law enforcement officers and prosecutors in the District of Utah into allegations of theft of federal funds, bribery, procurement fraud, wire fraud, money laundering, and conspiracy to commit those offenses, involving Michael Taylor, an individual with whom Lustyik appears to have a personal business relationship, in violation of 18 U.S.C. § 1503 (a) (Influencing or Injuring Officer or Juror Generally).

6.      Michael Taylor, date of birth 10/21/1960, is a former member of the United States Army Special Forces, and currently resides in Harvard, Massachusetts.  He is the owner of American International Security Corporation (AISC), a company located in Boston, MA, which offers private security services.  In 2007, AISC was awarded a contract eventually totaling over $53 million in payments made by the Department of Defense (DoD) to supply services related to training Afghan army special forces in Afghanistan.  It is this contract that is the subject of the USAO's criminal investigation

7.      Michael Taylor has previously operated as a law enforcement source for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). In 2004, I assisted in an internal affairs investigation which revealed that Taylor, while working as a paid undercover for the

3

US00121301

ATF, provided a $44,000 no-interest loan as well as between $6,000 to $10,000 toward the purchase of a Harley Davidson motorcycle, to an ATF agent with whom Taylor was working. The activity resulted in the premature retirement of the ATF agent, who wrongfully accepted and failed to report the receipt of the loan and gift from Taylor.

8.     Taylor, AISC, and others are currently targets of a criminal investigation by the Defense Criminal Investigative Service (DCIS), Immigration and Customs Enforcement/ Homeland Security Investigations (HSI), the Internal Revenue Service - Criminal Investigations (IRS-CI), and the United States Attorney's Office in the District of Utah (USAO), regarding allegations of fraud in the awarding and performance of that contract. The allegations include: (1) that Taylor bribed several DoD officials whose responsibilities included award and oversight of the contract;   (2) that Taylor committed conspiracy to defraud DoD in connection with procuring the contract; (3) that Taylor's company, AISC, submitted false claims for payments from the contract; and (4) that individuals associated with the scheme, including Taylor, thereafter engaged in money laundering in the District of Utah and elsewhere to conceal the source and ownership of the proceeds derived from the scheme.

9.     Taylor has been questioned by investigators regarding those allegations, retained counsel, and has been the subject of forfeiture proceedings filed on September 2, 2011 in United States District Court, District of Utah, relative to the investigation.  Criminal indictment of Taylor in the District of Utah is being pursued by the USAO.

10.     The investigation into Taylor and AISC has yielded evidence that Taylor communicates with Lustyik via e-mail. These e-mails were obtained through a search warrant of Taylor's e-mails in the Utah criminal investigation. That investigation has determined that the e-

4

                                                                    US00121302

mail addresses aisc01@aol.com is used by Taylor to send and receive e-mail messages relating to AISC business and to correspond with Lustyik and others.

11.   A review of these e-mails shows the e-mail address blustyik16@hotmail.com as corresponding to Lustyik. For example, the user of e-mail address blustyik16@hotmail.com has signed his e-mail messages as "Bob" or "Bob Lustyik".

12.   The e-mail communications between Taylor and Lustyik indicate that the two are involved in a business relationship involving, among other things, the procurement of business for Taylor in South Sudan.


## BUSINESS RELATIONSHIP BETWEEN LUSTYIK AND TAYLOR

13.   My investigation identified numerous e-mails in which Lustyik and Taylor discussed business opportunities. In one series of e-mails Taylor advised Lustyik of a lucrative potential contract protecting an oil drilling operation in the South Sudan. Specifically, in an October 24, 2011 e-mail, Taylor (aisc01@aol.com) forwarded to Lustyik a thread of communications from an oil company seeking to hire Taylor's company. Taylor wrote Lustyik, "Bob, These guys want to come see me about drilling for oil in South Sudan. Let's talk about this ASAP. Mike."

14.   In a message on the same topic, also dated October 24, 2011, Taylor wrote to Lustyik, "They want to meet the South Sudan ambassador that I told him I met before to ask if they can bid on an oil block. If all goes well and they get it we will get 7% and the security contract. They want to know if I can arrange the meeting next week. Do you know if the ambassador is in DC or NY or if he is still the ambassador? Mike"

Subject to Protective Order                                                         US00121303

15.    This e-mail discussion appears to refer back to an earlier e-mail message, dated June 19, 2011, where "Bob Lustyik" (blustyik16@hotmail.com) e-mailed the Ambassador from the South Sudan to the United States, stating, "[w]e are willing to provide you with 2 to 3 percent of any contract signed.  For example, 2 percent of a 20 million dollar contract is 200 thousand US dollars.  Please contact me either way so we may arrange to provide you with your "gift" [sic] for the last meeting you arranged."  In reply, the ambassador wrote, "I do not do that, taking percentages.  Sorry for that.  I am an honest Diplomat for my country . . ."

16.    In replying to the Ambassador's e-mail, after apologizing for his "unpleasant mistake," Lustyik wrote, "I can have my Boss make direct contact with you if you believe that is more appropriate . . .  I can assist you with AISCO . . . Please let me know if there is an opportunity for Mr Taylor to meet with your Vice President and yourself . . . I can assure you that Mr Taylor is someone who can be invaluable to your exciting new beginning in South Sudan…"  This e-mail is signed, "Bob Lustyik."

17.    The Ambassador, in his reply, stated, "I will keep you informed about his schedule the VP".  Lustyik forwarded this e-mail string to Taylor (aisc01@aol.com).

18.    In another series of e-mails, Taylor and Lustyik are seen to collaborate on a contract for military uniforms.  In a July 6, 2011 e-mail, Taylor (aisc01@aol.com) wrote Lustyik, "Bob, This is the address to mail the sample…Yu can use my FedX account number which Barb from my office will e-mail you."  In reply, Taylor provided Lustyik with the name George Zayek, and a corresponding address in Beirut, Lebanon.  In a message sent to Lustyik from aisc3@aol.com (an AISC business e-mail account determined to be used primarily by Barbara Auterio, an employee of Taylor's) approximately ten minutes later, Barbara Auterio responded and provided the Federal Express number requested.  In reply to aisc3@aol.com, Lustyik wrote,

6

"Hey mike.  Do u have a writeup on ur company that I can show sri lanka guy tomorrow? Thx." That message was then forwarded from aisc3@aol.com to aisc01@aol.com.

19.    The e-mail discussion regarding the military outfit contract was picked up in subsequent e-mail messages.  On July 19, 2011, Taylor (aisc01@aol.com) queried Lustyik, "Did they request sizes for the boots and BDU's?"   On July 20, 2011, Taylor e-mailed gzboston@hotmail.com, "On the boots they wanted 8 to 10s.  I said it should be 9 to 11s.  The bdus are mediums larges n some xls," apparently forwarding information Taylor received from Lustyik outside of the recovered e-mail traffic.  Later, on July 22, 2011, Taylor messaged gzboston@hotmail.com, "They want the same at the US army.  BDU's (Battle Dress Uniforms) and black boots."

20.    The e-mail gzboston@hotmail.com is believed to correspond to George Zayak, the individual Taylor referred to Lustyik in the July 6, 2011 e-mail exchange.  Zayak has been identified as someone to whom Taylor has made payments for unspecified services, according to AISC business records obtained by investigators in Salt Lake City.  These e-mail exchanges involving Lustyik, Taylor and Zayak appear to reflect the referral of a contract for military outfitting by Lustyik to Taylor, who in turn sought to fill the order through Zayak.

## LUSTYIK'S CONTACTS WITH THE UTAH INVESTIGATORS AND USAO IN THE DISTRICT OF UTAH REGARDING TAYLOR

21.    In January 2012, Utah-based HSI Special Agent (S/A) Shaun Helt, who is a co-case agent in the Taylor/AISC investigation, learned that a query had been made via the Treasury Enforcement Communications System (TECS) by an FBI analyst in Washington, DC regarding Michael Taylor.

7

22.    S/A Helt called the analyst, who told S/A Helt he made the TECS query at Lustyik's request.  The analyst, who seemed uneasy when S/A Helt spoke with him, did not know why Lustyik had made the request.  S/A Helt next called Lustyik, who told S/A Helt that he had asked for the TECS query as a routine background check on Taylor because he was considering using Taylor as a confidential source.

23.    In February 2012, Utah-based DCIS Special Agent Keith Darnell, co-case agent with S/A Helt on the Taylor/AISC investigation, called Lustyik.  In that phone call, Lustyik admitted that Taylor had told him he (Taylor) was under investigation.  Lustyik further told S/A Darnell, "how are you going to indict Taylor – he is a real patriot and we are trying to work him as a confidential source," or words to that effect.

24.    Thereafter, Lustyik called S/A Darnell in Utah several times, and told S/A Darnell things such as, "I don't know how you think this guy has committed a crime – he is a patriot," or words to that effect.

25.    S/A Darnell at one point asked Lustyik if he was trying to shut down the Utah investigation, to which Lustyik replied, "no at least not now, but it may come to that".

26.    S/A Darnell then advised Lustyik to contact the federal prosecutor who was handling the Taylor/AISC investigation, Assistant United States Attorney (AUSA) Robert Lund.

27.    Thereafter, Lustyik's partner, FBI Special Agent Sara Jones, reached out to AUSA Lund and arranged for a video telephone conference between AUSA Lund and Lustyik to discuss the FBI's using Taylor as a confidential source.

28.    AUSA Lund and AUSA Cy Castle, who is working on the Taylor/AISC criminal and civil forfeiture investigations, spoke with Lustyik from Utah via video telephone conference

8

US00121306

on March 1, 2012. Lustyik indicated that he was obliged to confine the discussion to non-classified matters.

29.     Lustyik offered to provide AUSA Lund with documentation showing why Taylor was valuable as a confidential source, and Lustyik did in fact provide four FBI 302 reports of interviews to AUSA Lund.

30.     The FBI 302 reports provided by Lustyik to the AUSAs in Utah appear to deviate from standard FBI 302 reports, in that they are unsigned and do not have a file number. Furthermore, the reports mostly contained dated information on Taylor stretching back to the 1980s and 1990s. The FBI 302 reports Lustyik provided were unaccompanied by any indication that their creation or dissemination was authorized by FBI supervisory personnel, in apparent violation of FBI policy.

31.     As a result of Lustyik's insistence that Taylor not be indicted, as well as the FBI 302 reports Lustyik provided, the Utah USAO was impacted in its investigation of Taylor. Specifically, the investigators and the AUSAs were required to take a number of steps to address the matters raised in the 302 reports. In addition, the USAO has had to consider whether Taylor's alleged work with Lustyik justified a decision to not indict him with his other co-conspirators.

32.     S/A Darnell also received an e-mail message from Lustyik on April 3, 2012, in which Lustyik again suggested that Taylor be used as a confidential source and not indicted. Specifically, Lustyik stated, "Can't we just get him to be a CW for you guys ??"

33.     On or about April 25, 2012, AUSA Lund received a call from Taylor's attorney in the civil forfeiture matter, during which Taylor's attorney specifically referenced Taylor's value to the FBI as a confidential source.

9

Subject to Protective Order

34.    On or about May 17, 2012, Lustyik provided AUSA Lund with two additional FBI 302 reports in support of his purported need to use Taylor as a confidential source. These two new FBI 302 reports contained the same deviations as the first four that Lustyik had provided to AUSA Lund.

35.    On or about May 23, 2012, S/A Darnell e-mailed Lustyik, asking whether the Salt Lake City investigators could expect anything further from Lustyik. On or about May 24, 2012, S/A Darnell received an e-mail message from Lustyik in response, stating, "The DEA [Drug Enforcement Administration] Agent who is working w Taylor right now will most likely be the last one. . . If u can give me a heads up before u guys indict him, that would be great. So I can shut stuff down. Or else I'm stuck in the middle. In the muck." This e-mail is the first mention of a DEA Agent working with Taylor, despite the fact that Lustyik had been pressing Taylor's use as a confidential source for the prior four months.

36.    On or about Thursday, May 31, 2012, S/A Helt initiated telephone contact with Lustyik, who advised that Taylor was officially signed up with the FBI and was working presently for the DEA, though the DEA had not formally opened him as a confidential source. The conversation was recorded by S/A Helt.

37.    On or about Thursday, May 31, 2012, S/A Helt received a telephone call from DEA S/A Ric Bachour, who advised that Taylor was providing information on five different DEA investigations in the middle east and Afghanistan, but was not formally opened with the DEA as a confidential source. Bachour requested that any charging of Taylor be put off for four to six months. I have learned that, prior to his employment with the DEA, Bachour was employed by and received compensation from Taylor. I have also learned that, during a 2002 proffer at the USAO in Boston, relative to a Department of Labor investigation of Taylor, Taylor

10

Subject to Protective Order

cooperated in the investigation and was not charged, and volunteered that Bachour, and another DEA agent had been his employees.   According to Taylor, the other DEA agent had been in Taylor's employ while employed at the same time as a DEA agent.

38.   On or about June 6, 2012, S/A Helt received text messages from Lustyik who stated, "I am heading down to my HQ tomorrow to talk to our unit Chief before he goes to Main Justice . . .even though HQ is hot on this. The speed (or lack thereof) is controlled by me," and that "Louie Freeh called our ADIC on MT's [Taylor's] behalf so we are under a microscope now.  I never realized they knew each other but, they do." Louie Freeh was the Director of the Federal Bureau of Investigation from 1993 until 2001.

39.   On June 11, 2012, Lustyik called S/A Helt in a call that S/A Helt recorded.  In that call, Lustyik informed S/A Helt that "we're going to wait and see what you guys are going to do . . . we'll go ahead and stand by and watch the indictment." Lustyik stated that he would probably get involved after that, and that the FBI's General Counsel was going to call Main Justice.  Lustyik added that even if the FBI goes to Main Justice, the FBI wasn't going to push to stop the indictment; Lustyik stated, "the FBI doesn't have the balls to do that anymore."  Lustyik also stated that the first 15 people Michael Taylor was going to call as character witnesses (presumably at trial if he is indicted) are retired FBI agents.

11

Subject to Protective Order

US00121309

**PROBABLE CAUSE TO BELIEVE THAT THE**
**RECORDS CONTAIN EVIDENCE, FRUITS, AND**
**INSTRUMENTALITIES OF THE CRIMES IDENTIFIED ABOVE**

40.     I also have probable cause to believe that aisc01@aol.com is Taylor's e-mail account, and the data associated with this account contains evidence, fruits, and instrumentalities of the crimes identified above.

41.     Likewise, I have probable cause to believe that blustyik16@hotmail.com is Lustyik's e-mail account.

42.     The USAO investigation of Taylor has established that Taylor operates the e-mail account aisc01@aol.com, which is the e-mail account used to communicate with blustyik16@hotmail.com.

43.     The USAO investigation of Taylor identified approximately 70 e-mail messages made between Taylor's e-mail account and blustyik16@hotmail.com from approximately June 2011 through approximately December 2011.

44.     In several e-mail messages to Taylor's e-mail accounts, the operator of blustyik16@hotmail.com identified himself as "Bob," and discussed FBI related activity and colleagues.

45.     In several e-mail messages in October and November 2011, Lustyik and Taylor discussed the Utah criminal investigation into Taylor and AISC.  For example, on October 25, 2011, Taylor e-mailed blustyik16@hotmail.com and stated, "I'm wondering if the other guy is trying to cook something up.  Not your buddy's outfit, the other one that we are checking to see what authority they have.  He is the guy that is trying to make everything fit into his theory."  From my review of records and information obtained from other agents and witnesses, I believe

12

that Taylor is referring to either S/A Darnell (who is an investigator within the Department of Defense) or one of the other investigators on the Utah case when he discussed "the other guy." This is also supported by the fact that on November 22, 2011, Taylor e-mailed blustyik16@hotmail.com with a lengthy recitation of discussions Taylor had with his attorney regarding the Utah investigation. In that e-mail, Taylor stated that "[m]y lawyer also told the AUSA's that he believes the investigator from DOD has a theory and is trying to fit evidence into his theory . . ."

46.   In another e-mail message dated November 4, 2011 to blustyik16@hotmail.com, Taylor stated, "Did you hear back from your buddy yet? I heard news that was not great as to which way they are leaning." In replying, the operator of blustyik16@hotmail.com responded, "Really? I will call u tonite. There is no way they indict you." Taylor responded, "I think they may be bullshiting. We have caught them in a few lies." The operator of blustyik16@hotmail.com asked, "[t]hey or the DOD guy? They r talking indictment ? They are so full of shit." From my review of records and information obtained from other agents and witnesses, I believe that the "DOD guy" that blustyik16@hotmail.com is referring to is S/A Darnell.

47.   In a related e-mail string which had discussed the Utah investigation, directly following Taylor's e-mail stating "I think they may be bullshiting. We have caught them in a few lies," blustyik16@hotmail.com responded, "We gotta figure out a way to lock down the SS gig." Based on my review of e-mail communications between Taylor and blustyik16@hotmail.com, I believe this refers to a private business deal in the South Sudan that Taylor and Lustyik had previously discussed.

13

Subject to Protective Order
US00121311

48.     Following these exchanges, in January 2012, agents investigating Taylor and AISC in Utah had telephonic contact with an individual identifying himself as FBI Special Agent Robert Lustyik, who questioned and criticized the investigation of Taylor and claimed to be contemplating opening Taylor as an FBI confidential source.  Lustyik gave S/A Darnell the impression that he was just beginning his work with Taylor, and yet the above e-mail traffic, along with other e-mails that I have examined, makes clear that Lustyik had been dealing with Taylor since at least June 2011.

49.     Investigation into Taylor and AISC identified numerous e-mail messages which on the surface appear to be operational activities being performed by Taylor and others.  For example, in an e-mail dated October 28, 2011, Taylor e-mailed blustyik16@hotmail.com a list of names of persons "that deal in international drugs and some use the profits to assist Hizballah."  However, in the same e-mail string, blustyik16@hotmail.com responded, "I've been playing phone tag w ya . . . Will the Oil co be paying for Hannes' [Johannes Thaler, an associate of Taylor] travel to DC?"  Taylor responded, "[y]es, they will pay for the expenses.  I need to talk with you as soon as you can."  This exchange suggests that Lustyik has taken a personal interest in a business venture being pursued by Taylor and Johannes "Hannes" Thaler, whom I have identified as a childhood friend of Lustyik.  The intermingling of the discussion of personal pecuniary interests by Lustyik and Taylor with other exchanges – regarding purportedly official operational activities – indicates that the Lustyik–Taylor relationship may have deviated from the legitimate handler–source structure.

50.     These messages, and other ones reflecting Lustyik's involvement in some of Taylor's business activities expose Lustyik to potential administrative and/or criminal penalties should they be discovered.

14

51.  In addition, I have reviewed emails from Lustyik's email account, blustyik16@hotmail.com, which were obtained pursuant to a search warrant signed by Magistrate Judge Alba on May 23, 2012.  A number of these emails further support a finding that probable cause exists that the account aisc01@aol.com contains evidence, fruits, and instrumentalities of the crimes identified above.  For example,

a.   On May 14, 2012, aisc01@aol.com emailed blustyik16@hotmail.com and stated, "Brooks [Taylor's attorney] called me after speaking with Utah and he says he believes they are going to indict me. He also says there is no deal to be made because of something called guidelines that will put me in jail forever."  Lustyik forwarded this email Johannes "Hannes" Thaler, with whom both Taylor and Lustyik are associated.  Thaler responded, "I know.  This doesn't sound good. He told me a while back his family would be better off with him dead than indicted."  Lustyik replied to Thaler, "I've done everything possible.  The ausa is crazy."

b.   In an email string related to the one above, Lustyik responded to Taylor, "Relax.  Give main justice a shot.  Plus. Barbara is going to convince the jury there is no case."  I believe that Lustyik's reference to "Barbara" refers to the fact that the AISC Operation's Manager Barbara Auterio was subpoenaed to testify before the grand jury in relation to the Utah criminal investigation.  Later on in the email string, Lustyik emailed Taylor, "They have no case.  Trust me.  The fact that I (the fbi) appears to be failing at stopping this is so disheartening."

c.   On June 3, 2012, Lustyik emailed Taylor at aisc01@aol.com, stating, "So we have got them running scared now. Their investigators are panicked about our calls n meeting w OGA and main Justice. We meet w Farbiage again on tuesday am. He is gonna ask to have the venue moved to NY. Sean Helt, one of their investigators said..." Well if ur doing that we will pull the trigger on it now". I told him. If u have a case u wouldve indicted way before now. Then

15

                                                    US00121313

speaking w ausa asst. She said. "We aren't even sure we can indict on this". So they don't have a clue." I believe that Lustyik's reference to "Sean Helt" is the recorded call S/A Helt made of his conversation with Lustyik four days earlier. However, it is unclear that Lustyik spoke with an AUSA who informed him that Taylor could not be indicted; there is no female AUSA assigned to the USAO criminal investigation. Additionally, the call between S/A Helt and Lustyik was recorded, and Lustyik did not in fact make the statement to S/A Helt he reported making above.

      d.     Also on June 3, 2012, in an email string related to the one above, Taylor (aisc01@aol.com) asked Lustyik, "What is the chance of having the venue moved to NY? Sounds great but the "cow pokes" don't listen to anyone." Lustyik responded, "Based on your "mahopac address". U have NO NEXUS to Utah at all. None. It should be in Boston or NY."

      e.     On June 5, 2012, Lustyik emailed Taylor at aisc01@aol.com, and stated, "Finally we have everyone on board and our HQ is forcing the hand of MJ [Main Justice]. The biggest hurdle is that its a DOD [Department of Defense] case not a DOJ [Department of Justice] case but it might work to our advantage. Our Unit Chief (UC) is calling over to her friend at MJ who handles that region. That friend's husband is high up in DOD. I am playing every card in my hand. Our AUSA said that with all the different agencies and retired guys involved there is no way that they win this case if it went to trial. I reminded everyone that the GOAL is no trial." Later on in the same email string, Lustyik wrote, "We push the issue every day until we get a resolution." As of the date of this affidavit, I have no information that anyone at the Department of Justice or the FBI is trying to prevent the presentation of the indictment to the grand jury.

Subject to Protective Order      US00121314

## TECHNICAL BACKGROUND

52.     In my training and experience, and through discussions with other agents, I have learned that e-mail hosting companies, such as AOL Inc., maintain server computers connected to the Internet. Their customers use those computers to send e-mail on the Internet.

53.     AOL Inc. ("AOL") provides e-mail services to customers as part of its Internet service.

54.     AOL customers may access their accounts on the company's e-mail servers from any computer connected to the Internet.

55.     AOL maintains electronic records relating to their customers. These records include account application information, account access information, and e-mail transaction information.

56.     When an AOL customer sends an e-mail, it is initiated at the customer's computer, transferred via the Internet to AOL's servers, and then transmitted to its end destination. Conversely, an e-mail sent to an AOL customer resides on AOL's servers until it is transferred by the customer to his computer to be read.

57.     By default, unread e-mail will remain on AOL's servers for 30 days. Sent e-mail will remain for up to 30 days. The length of time that read e-mail remains on AOL's servers depends on how a customer configures his account, but it is usually 30 days. In addition, AOL has storage capacity that allows customers, so choosing, to store opened incoming e-mail and sent e-mail without a set expiration date, subject to a maximum size limit.

58.     AOL's legal compliance guide also indicates that it can provide the following additional information associated with a subscriber's account:  address books; "buddy" lists; photos, files, data, or information; and World Wide Web profiles or homepages.

17

Subject to Protective Order

**LEGAL AUTHORITY**

59.    The government may obtain both electronic communications and subscriber information from an e-mail provider by obtaining a search warrant.  18 U.S.C. §§ 2703(a), 2703(c)(1)(A).

60.    Any court with jurisdiction over the offense under investigation may issue a Section 2703 search warrant, regardless of the location of the website hosting company or e-mail provider whose information will be searched.  18 U.S.C. § 2703(b)(1)(A).  Furthermore, unlike other search warrants, Section 2703 warrants do not require an officer to be present for service or execution of the search warrant.  18 U.S.C. § 2703(g).

61.    If the government obtains a search warrant, there is no requirement that either the government or the provider give notice to the subscriber.  18 U.S.C. §§ 2703(b)(1)(A), 2703(c)(3).

**CONCLUSION**

62.    Based on the information described above, I have probable cause to believe FBI Special Agent Robert Lustyik, Jr., has attempted to and continues to attempt to influence the criminal investigation by federal law enforcement officers and prosecutors in the District of Utah into allegations of theft of federal funds, bribery, procurement fraud, wire fraud, money laundering, and conspiracy to commit those offenses, involving Michael Taylor, an individual with whom Lustyik has a personal business relationship, and others, in violation of 18 U.S.C. § 1503 (a) (Influencing or Injuring Officer or Juror Generally).

18

Subject to Protective Order

US00121316

63.   Based on the information described above, I have probable cause to believe that computer systems owned or operated by AOL hold evidence, fruits, and instrumentalities of these crimes as described in Attachment A.  AOL accepts service of process at:

> Public Safety and Criminal Investigations Unit
> Attn: Custodian of Records
> AOL Inc.
> 22000 AOL Way
> Dulles, VA 20166
> (Fax) (703) 265-2305

64.   Based on the information described above, I have probable cause to believe that the evidence of  18 U.S.C. § 1503 (a) (Influencing or Injuring Officer or Juror Generally) includes e-mail content and other records, as more fully described in Attachment B to the search warrant.

65.   The procedures that will be used to copy and review the relevant records are set out in Attachment B to the search warrant.

## REQUEST TO SEAL AND PRECLUDE NOTICE TO THE SUBSCRIBER(S)

66.   I request that this Application and Warrant be sealed by the Court until such time as the Court, pursuant to Local Rule DUCrimR 49-2, directs otherwise.  I further request that, pursuant to 18 U.S.C. § 2705(b), the Court order AOL not to notify any person (including the subscriber(s) or customer(s) to which the materials relate) of the existence of this Application, the Court's warrant, or the execution of the warrant, unless and until authorized to do so by the Court. Such an Order is justified because notification of the Application, the Court's warrant, or the execution of the warrant could seriously jeopardize the ongoing investigation.  Such

19

US00121317

disclosure could give the subscriber an opportunity to destroy evidence, notify confederates, or flee or continue flight from prosecution.

## FOURTEEN-DAY RULE FOR EXECUTION OF WARRANT

67.    Federal Rule of Criminal Procedure 41(e)(2)(A) and (B) directs the United States to execute a search warrant for electronic evidence within 14 days of the warrant's issuance.  If the Court issues this warrant, the United States will execute it not by entering the premises of AOL, as with a conventional warrant, but rather by serving a copy of the warrant on the company and awaiting its production of the requested data.  This practice is approved in 18 U.S.C. § 2703(g),[1] and it is generally a prudent one because it minimizes the government's intrusion onto Internet companies' physical premises and the resulting disruption of their business practices.  It is possible that the company could produce the data outside the 14-day deadline, in which case the United States would want to view the data without a further court order or follow-up warrant, with the exception of any records or data that were created (as opposed to copied) after the 14-day deadline.

68.    For these reasons, I request that the Court approve the procedures in Attachment B, which will allow the United States to review evidence that the company provides after the 14-day deadline, with the exception of any records or data that were created (as opposed to copied) after the 14-day deadline.  The United States would be prohibited from knowingly reviewing

---

[1] Section 2703(g) provides that "[n]otwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service."

20

Subject to Protective Order

US00121318

late-created data, and could not knowingly review it without a further order or follow-up warrant

from this Court.

Respectfully submitted,

Thomas M. Hopkins
Special Agent
United States Department of Justice
Office of the Inspector General

Subscribed and sworn to before me
on June 13, 2012,

UNITED STATES MAGISTRATE JUDGE

21